[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Emmit Lee Blackburn was charged by indictment with four counts of rape, two counts of sexual battery, and two counts of corruption of a minor, all involving Kimberly Horn. He was also charged with forcible rape of Betty Jean Blackburn, who was under age thirteen. The rape charges as to both victims were first degree felonies and, as to Betty Jean Blackburn, required life sentences upon conviction.
Blackburn was initially represented by Attorney David Fuchsman. After unsuccessfully seeking separate trials on the eight counts relating to Kimberly Horn and the two counts relating to Betty Jean Blackburn, Blackburn entered a plea of no contest to one count of rape as to Kimberly Horn and one count of rape — with the force element deleted — as to Betty Jean Blackburn. Deletion of the force element as to Betty Jean Blackburn eliminated the possibility of a life sentence. In return for his no contest pleas, the State agreed to dismiss the remaining charges, not to prosecute additional charges relating to other alleged victims, and that Blackburn serve two ten year concurrent sentences. The trial court made findings of guilty and continued the matter for sentencing.
Thereafter, Blackburn moved to withdraw his no contest pleas. After an evidentiary hearing, wherein Blackburn was represented by new counsel, the motion to withdraw was overruled, and Blackburn was sentenced to concurrent terms of ten years imprisonment.
On appeal, Blackburn advances a single assignment of error and two issues for review as follows:
 THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S PRE-SENTENCE MOTION TO WITHDRAW HIS PLEA OF NO CONTEST IN LIGHT OF DEFENDANT-APPELLANT'S CONTINUOUS DENIAL OF GUILT AND THE INEFFECTIVE ASSISTANCE OF HIS TRIAL COUNSEL.
 Assignment of Error I, Issue I
 Whether a defendant's counsel should be considered highly competent when he erroneously informs a Defendant that if he were to be convicted he could only receive a life sentence and advises a defendant to accept a ten year plea bargain when he has come into possession of a signed affidavit by one of the alleged victims, recanting all her allegations and when it is evident from the plea hearing that the defendant did not understand the particulars of his plea.
 Assignment of Error I, Issue 2
 Has a trial court acted unreasonably in denying a defendant's pre-sentence request to withdraw his no contest plea when defendant has steadfastly maintained his innocence, been erroneously instructed by counsel that if he were to be convicted he could only receive a life sentence and has come into possession of a signed affidavit by one of the two alleged victims, recanting all her allegations.
Blackburn recognizes that whether to allow a pre-sentence withdrawal of a no contest plea is commended to the discretion of the trial court and frames his argument around the frequently cited third paragraph of the syllabus of State v. Peterseim
(1980), 68 Ohio App.2d 211:
 A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.
Blackburn finds no fault with the plea proceedings or hearing on his motion to withdraw his pleas, but he contends that Attorney Fuchsman was not "highly competent counsel" in advising him to enter no contest pleas (Issue I) and that the trial court did not give full and fair consideration to his plea withdrawal request. (Issue 2).
At the outset, we observe that while we have a transcript of the plea proceedings, we do not have a transcript of the evidentiary hearing on the motion to withdraw the no contest pleas. An examination of the parties' briefs indicate that neither party considered a transcript of that hearing to be essential to the argument of this appeal.
 1.
Blackburn contends that the trial court erred in finding that Fuchsman was highly competent because Fuchsman erroneously assured Blackburn that if he went to trial, he would be convicted and receive a life sentence. This contention is based on Blackburn's letter to the trial court to that effect, and Fuchsman's statement during the plea proceeding that Blackburn "does not want to spend the rest of his life in jail." As to the letter, the trial court, in overruling the motion to withdraw the no contest pleas, observed that "Blackburn offered no testimony or other evidence . . . that he had been misled by Fuchsman into believing `if he stood a jury trial he would only get a life sentence.'" January 20, 1998, Finding of Fact #2. Furthermore, it appears as if the trial court credited Fuchsman's testimony that he merely "discussed with Blackburn the potential penalties Blackburn faced . . . and his possible plea options. Finding of Fact #1. We have no reason to question this determination.
Fuchsman's statement at the plea proceeding was as follows:
 However, knowing all that and now with the Judge's decision to try the cases together, my client is very concerned that, that evidence would be ignored when the jury were to hear both victims testifying about the same sort of acts, and, therefore, he does not want to spend the rest of his life in jail. He is concerned about the evidence that would be produced against him and is entering the no contest plea with the understanding that he is going to get 10 years in this matter.
Is that all correct, Emmit?
DEFENDANT BLACKBURN: Yes.
This statement does not tend to establish that Fuchsman told Blackburn that if he went to trial he would be convicted and sentenced to life in prison. It merely reflects that the trial court had previously determined not to permit separate trials as to Kimberly Horn and Betty Jean Blackburn, and that if the jury found him guilty as charged of raping Betty Jean Blackburn, a life sentence was mandatory. All of this was correct information.
Blackburn also contends that Fuchsman was not highly competent because the transcript of the plea proceeding reveals that he, i.e., Blackburn, was only "vaguely familiar with the terms of his negotiated plea bargain," which would not have been the case had Fuchsman been highly competent. The transcript of the plea proceedings belies this contention. The only possible lack of understanding was Blackburn's initial misunderstanding of how he could receive two ten year sentences and still only serve ten years. The trial court proceeded to explain concurrent sentencing to Blackburn's satisfaction.
Finally, Blackburn contends that Fuchsman was not highly competent because he "made no effort to revisit the issue of splitting the trials" after Kimberly Horn had recanted and before Blackburn pleaded no contest.
As indicated above, the trial court had overruled Blackburn's motion for separate trials as to Kimberly Horn and Betty Jean Blackburn. Prior to Blackburn's entering his no contest pleas, Kimberly Horn recanted her accusations against Blackburn to her mother, and Fuchsman learned of the recantation prior to the plea proceeding.
For reasons that are not clear to us, Blackburn contends that Fuchsman was derelict in not again moving for severance. We disagree. Notwithstanding the recantation, the record does not suggest that the State was about to throw in the towel on the eight counts relating to Kimberly Horn. Indeed, Betty Jean Blackburn was a potential State's witness as to the charges relating to Kimberly Horn. See Finding of Fact #3. As such, it would be pure speculation to imagine that the trial court would have ruled differently than it had initially on the severance issue. Secondly, Fuchsman could have reasonably calculated that a joint trial, should it have come to that, would have worked to Blackburn's advantage if Kimberly Horn's recantation were brought to the jury's attention. More importantly, Betty Jean Blackburn had not recanted. Had Blackburn been convicted of forcibly raping her, he faced life in prison. Fuchsman had an opportunity to dispose of all charges as to Kimberly Horn and Betty Jean Blackburn, and potential charges involving at least four other alleged victims — see October 10, 1997, plea transcript at 17; State's prehearing response to motion to withdraw plea, Doc. #59, p. 6 — for an agreed upon ten years incarceration. We are not persuaded that Fuchsman was other than highly competent in Blackburn's representation. Hence, Blackburn has failed to satisfy the first prong, i.e., that Fuchsman's performance was deficient, of the two prong test for ineffective assistance of counsel as applied to pleas. See Hill v. Lockhart (1985), 474 U.S. 52, relied upon in State v. Xie (1992), 62 Ohio St.3d 521, 524.
 2.
In support of his contention that the trial court failed to give full and fair consideration to his motion to withdraw his no contest pleas, Blackburn, citing State v. Wyke (April 8, 1993), Franklin App. No. 92AP-1137, unreported, appears to argue that the trial court applied an incorrect standard, i.e., "the more stringent manifest injustice" standard of Crim.R. 32.1 pertaining to post-sentence motions. We disagree. Xie holds:
 1. A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea.
* * *
 2. The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court.
It is clear from the trial court's "conclusion" to its nine page decision and entry overruling Blackburn's motion that it applied the presentence standard articulated in Xie. We are not persuaded by Blackburn's argument based on Wyke that the trial court's not having discussed the question of hardship to the State should the no contest pleas be withdrawn indicates either a misapprehension of the proper standard or a failure to fully and fairly consider the motion.
Blackburn also contends that the trial court failed to give full and fair consideration to his motion by not considering the misinformation Fuchsman gave him about the consequences of going to trial. As indicated above, Fuchsman appears to have testified that he did not misinform Blackburn, and the trial court credited that testimony.
Finally, Blackburn contends that the trial court took notice of his claims of innocence "but failed to fully address any of the other bases" of the motion to withdraw the no contest pleas.
Other than protestations of innocence and alleged misinformation about the consequences of going to trial, the only other ground for relief was Blackburn's claimed ignorance of Kimberly Horn's recantation at the time he pleaded no contest. The trial court considered this contention and rejected it based on the plea proceeding and testimony at the evidentiary hearing:
 An evidentiary hearing on Blackburn's motion to withdraw his plea was conducted on January 12 and 16, 1998. Testifying on behalf of the defense were Blackburn. Testifying for the State were Fuchsman and Vickie Polson, the mother of complainant.
FINDINGS OF FACT
 This court finds the following facts to have been established by a preponderance of the evidence:
* * *
 6. On October 9, the day before Blackburn entered his no contest plea, he met with Vickie Polson at the Montgomery County Jail. Polson told Blackburn that Kimberly Horn had "had changed her story" and that Blackburn "had not touched her." Blackburn instructed Polson to have Horn's statement reduced to writing, notarized and copies delivered to his attorney, the prosecutor and the court. Polson agreed to do so.
 7. As Blackburn was in conversation with Polson, Attorney Fuchsman arrived at the County Jail. After Polson had finished her conversation with Blackburn, she informed Fuchsman that Kimberly Horn had told her that she had not been sexually assaulted by Blackburn; that she had made the false accusation because she was angry with Blackburn; and that she previously had retracted her allegations several times. (Fuchsman's notes, contemporaneously written during his conversation with Polson and signed by Polson, are marked as State's Exhibit 1.)
 8. Immediately after his conversation with Polson, Fuchsman told Blackburn that Kimberly Horn had recanted, and that she had done so several times.
 9. Given the testimony of Polson and Fuchsman as reflected in Findings of Fact 6, 7, and 8 above, it is clear that Blackburn falsely testified before this Court that he had no knowledge, prior to entering his plea of no contest, that Kimberly Horn had recanted. This perjured testimony severely undermined the credibility of Blackburn's entire testimony.
 10. Assuming arguendo that Blackburn had no knowledge, prior to the day he entered his no contest plea, that Kimberly Horn had recanted, he obviously became aware of that fact at the plea proceedings and prior to entering his no contest plea. This is evidenced by the following excerpt which appears in the transcript of the plea proceeding:
 [MR. FUCHSMAN:] The Court must be aware that yesterday I had an opportunity, strictly a coincident (sic), I say that as an officer of the Court, to speak to the mother of the one victim who was visiting Mr. Blackburn in jail at the same time I was going to discuss with him that the Court was going to try them now together, not separate as I had indicated to him earlier, and I spoke to the mother, and she indicated to me that she has confronted her daughter about the allegations, and that she had recanted to her on a number of occasions, and I had her sign a statement to that effect.
 However, knowing all that and now with the Judge's decision to try the cases together, my client is very concerned that, that evidence would be ignored when the jury were to hear both victims testifying about the same sort of acts, and, therefore, he does not want to spend the rest of his life in jail. He is concerned about the evidence that would be produced against him and is entering the no contest plea with the understanding that he is going to get 10 years in this matter.
Is that all correct, Emmit?
DEFENDANT BLACKBURN: Yes.
There is no basis in the record for us to second guess the trial court's findings of fact on this contention.
The trial court acted well within its discretion in concluding that Blackburn failed to establish a reasonable and legitimate basis for the withdrawal of his no contest pleas.
The assignment of error is overruled.
The judgment will be affirmed.
GRADY, P.J. and FAIN, J., concur.
Copies mailed to:
George A. Katchmer
James C. Staton
Hon. John P. Petzold