{¶ 143} I must respectfully dissent. It is clear that pursuant to Crim. R. 32.1, once a defendant files a motion to withdraw a guilty plea prior to sentencing, the motion shall be "freely and liberally granted."[13] Here, rather than granting the motion, the trial court engaged in an animated dialogue with the defendant in an attempt to get him to change his mind about withdrawing his plea.
 {¶ 144} The majority is correct that the standard for reviewing a motion to withdraw a plea is found in State v. Peterseim.[14] The facts in this case, however, do not meet that standard. I agree with the majority that the trial court clearly misinformed Curd about the law of sentencing and the potential consequences of his attempt to withdraw his plea. While the majority is content to label this failure of the trial court as "harmless error," I am not. The job of the trial court in a plea hearing, a change of plea hearing, and a withdrawal of plea hearing is uniformly identical. The goal is to insure that the plea has been entered consistent with constitutional guarantees.
 {¶ 145} It is not possible to conclude that Curd entered into a knowing, intelligent, and voluntary plea when the record is replete with instances where the trial court misstated the law of Ohio. Not possible.
 {¶ 146} The trial court's relentless demands for a "legitimate" reason for Curd's change of heart becomes even more troubling when examined more closely. Curd was unhappy with his representation, and I would respectfully disagree that the Strickland standard is appropriate in this matter. Curd explained to the trial court that various trial preparation matters had not been performed, such as the securing of medical records and physical evidence of the crime. The majority suggests that any attempt to secure physical evidence from the crime scene would constitute "evidence tampering" and that simply is not true.
 {¶ 147} Further, Curd was unhappy that his counsel did not secure his medical documentation from the hospital. The majority suggests that since he refused treatment the records would shed no light on his level of intoxication. Again, I must disagree. Without seeing the records, how would counsel, or this court, know?
 {¶ 148} A man was charged with a heinous crime. He faced the possibility of decades in jail. He knew that. And yet, for reasons known only to him, he filed a motion to withdraw his guilty plea and take his chances. Under the law of Ohio that is his right and, particularly before sentencing, it should be "freely allowed and treated with liberality."[15]
 {¶ 149} The trial court was wrong when it: (1) misinformed Curd about the law of Ohio; and (2) applied the wrong standard to Curd's right to withdraw his plea.
 {¶ 150} I also disagree with the majority's analysis of the application of Blakely v. Washington to this case.[16] The majority concludes that "[a]s applied in this matter, Ohio's sentencing scheme is not unconstitutional in light of Apprendi and Blakely."[17] At this time, since I advocate a reversal of Curd's conviction, I withhold an opinion as to whether Blakely applies to this matter. However, I believe the majority's analysis may add further uncertainty to the application ofBlakely to Ohio's sentencing laws.
 {¶ 151} Initially, I am troubled by the majority's use of an element of an offense, in this case the "force or threat of force" in the rape statute, standing alone, as justification for a trial court to find that the minimum sentence would demean the seriousness of the crime. The Ohio Legislature has classified rape as a first-degree felony.[18] As such, the Ohio Legislature has set the minimum term for the offense at three years.[19] Finally, the Ohio Legislature has specifically indicated that in order to sentence a defendant to a term longer than the minimum, the court must make findings pursuant to R.C. 2929.14(B). The majority's conclusion that these findings could be the verbatim language of the statute is entirely circular and undercuts the directives of the Ohio Legislature.
 {¶ 152} In addition, I am concerned with the majority's reliance on a confession to meet the Blakely standard. As stated by the United States Supreme Court in Blakely "[o]ur precedents make clear, however, that the `statutory maximum' for Apprendi purposes is the sentence a judge may impose solely on the basis of the facts reflected in the jury verdict oradmitted by the defendant."[20] The court held that the facts admitted by the defendant refer to facts admitted in the guilty plea.[21]
 {¶ 153} However, the majority's opinion extends this ruling to include any facts admitted by a defendant, including those admitted in a confession to the police. I believe this extension sets an extremely dangerous precedent. Is the next step to have a random person state at the sentencing hearing that "the defendant told me he did it because (fill in a reason)"? Under the majority's analysis, this would be an admission for Blakely purposes. The only difference is that Curd confessed to the police.
 {¶ 154} The facts of this case clearly demonstrate the potential perils of the majority's holding. Curd's confession was not admitted into evidence during a jury trial. In this case, the majority apparently relies on the presentence investigation report, which contains a review of the police report, which purportedly contains an alleged confession by Curd. The levels of hearsay are overwhelming. The majority labels Curd's confession "valid and unchallenged." By entering a guilty plea, Curd no longer needed to challenge the validity of his confession, since there was no trial. Moreover, I am not in a position to conclude that the confession is "valid."
 {¶ 155} There is an overwhelming rationale for prohibiting alleged admissions introduced at a sentencing hearing from satisfying theBlakely requirement. The Rules of Evidence do not apply to sentencing hearings.[22] Accordingly, hearsay statements are readily introduced through the prosecutor, presentence investigation reports, and statements by the victim and family members. At a sentencing hearing, a defendant is not afforded the opportunity to cross-examine adverse witnesses. Finally, the defendant does not have the benefit of having the allegations against him proven beyond a reasonable doubt.
 {¶ 156} The ultimate holding of Blakely is that a defendant's Sixth Amendment right to a jury trial has been violated when a judge makes findings that increase a sentence based on facts not found by a jury or admitted as part of the plea agreement.[23] How is Blakely overcome by considering extra-judicial admissions, introduced through multiple layers of hearsay at a sentencing hearing before a judge? It is not.
 {¶ 157} I believe Curd's conviction should be reversed, and this matter should be remanded to the trial court to allow him to withdraw his guilty plea.
[13] State v. Xie (1992), 62 Ohio St.3d 521, 527.
[14] State v. Peterseim (1980), 68 Ohio App.2d 211.
[15] Barker v. United States (C.A.10, 1978), 579 F.2d 1219, 1223.
[16] Blakely v. Washington (2004), 124 S.Ct. 2531.
[17] See Blakely, supra, and Apprendi v. New Jersey (2000),530 U.S. 466.
[18] R.C. 2907.02(B).
[19] R.C. 2929.14(A)(1).
[20] (Citations omitted and emphasis sic.) Blakely v. Washington,124 S.Ct. at 2537.
[21] Id.
[22] Evid. R. 101(C)(3).
[23] Blakely v. Washington, supra.